Anderson v. Armour Ms. Benedetto Yes, Your Honor. May it please the Court? I'm Stephen Benedetto. I represent... Would you like me to begin, Your Honor? My apologies. Oh, yes, please. I'm sorry. I'm getting the case in front of me. May it please the Court? I'm Stephen Benedetto, and I represent Gianna Anderson. I'd like to reserve three minutes of my time, and I will keep my own time to accommodate that. From the first moment of the first day of this trial, this is a case that was very clearly about one thing and one thing only, and that was the parties' respective credibility. Ms. Anderson had one story. Officer Armour had a very different story, and there was no independent evidence to suggest who was telling the truth and who was not. No witnesses, no body cam, and no recordings. At least that's what we were led to believe until the last testimonial day of trial and the last witness on that last testimonial day. That's when Officer Armour testified and revealed for the first time after four years of litigation that there actually was independent evidence. He'd created it on his personal cell phone, and he'd gotten rid of that cell phone before the lawsuit was filed. The district court in this case heard an oral motion for sanctions for that spoliation and concluded that no spoliation had occurred because the phone was lost before Ms. Armour testified. They concluded that there was only a disclosure violation meriting a brief and limited reopening of cross-examination. The question posed in this appeal, the reason we're here today, is actually quite simple. Did the court abuse its discretion in concluding no spoliation had occurred and failing to order an appropriate sanction? And the answer to that is equally simple, and it finds its root in the law. The law is very similar to Rule 37, and indeed the case law that existed before Rule 37E was ever amended predates litigation. There is a reasonable anticipation of litigation that triggers that duty, and the court's analysis was faulty for that reason. So let's talk for a moment about why this disclosure was so devastating to Ms. Anderson's case. Before you do that, I mean, wasn't this wasn't the testimony that the phone was discarded some months before the complaint had even been made to the police department, let alone the lawsuit? That was the discussion on which we contend the district court erred, Your Honor. The evidence showed, and this came from multiple witnesses, that the night of the incident, Ms. Anderson complained about Officer Armour. A supervisor, who was not even an Officer Armour supervisor, complained initially to Officer Armour, who called his supervisor. His supervisor, an employee of Defendant City of Phoenix, came from about 20 minutes away to take Ms. Anderson's complaint. He documented Ms. Anderson's complaint in what is called a blue team report, which through discussion at sidebars, which are on the record, was a representation of Mr. Armour's counsel and counsel for the city, that the purpose of this blue team report is to document a civilian complaint. So one of the assignments of error here is that there is a conflation of the idea of a civilian complaint made on the scene as of the time as somehow being insubstantial, but a professional standards complaint being sufficient to trigger a duty. There's no discussion of that and no support for that anywhere in the case law, but it's very clear from the very beginning of testimony in this case that Officer Armour had every reason to know that there was the possibility, the reasonable possibility of litigation against him. And that's all that's necessary. You're saying that the duty to preserve ESI here was triggered essentially the day of this incident or the next day when this informal complaint, I guess we can call it, was made to the police department? It was, Your Honor, and it was for several reasons. And I will also say the answer to that is even if it weren't, it doesn't matter anyway. And I'll explain that in a moment. But the reason why the night of the incident was the trigger date goes back to Officer Armour's specific knowledge. He knew that Miss Anderson was trying to videotape this entire incident, and she was unable to do so because he grabbed her wrist and yanked her out of the car. He knew she was angry at him and insisted on speaking to a supervisor. He testified to this. He knew that supervisor came in to document Miss Anderson's complaint, and that supervisor, Sergeant Honeycutt, specifically testified that that is why he documented the complaint, because it was a civilian complaint. How long after this initial complaint was it until he did that, exactly, Your Honor? Because the disclosure of this information occurred during the middle or towards the end of his cross-examination. It was a surprise disclosure we were not prepared to deal with. And so the testimony that came out ultimately was that it was afterwards, some matter of months afterwards, probably late 2015. This incident occurred in October of 2015 or early 2016, but we do not know the answer to that question. So, in your view, the district court was legally incorrect because the district court concluded that the duty to preserve starts at the point that the lawsuit is filed, when in fact the duty to preserve arises when a party knows it is relevant to reasonably foreseeable litigation. In your factual assignment of error, is that the district court found that the litigation was not reasonably foreseeable from that early point? That's correct, Your Honor. And there is a second component to that, which is even if factually the court were correct, and we maintain the court was not, but factually the court were correct in concluding that all the evidence of Ms. Anderson making a complaint that night was inadequate to preserve or to trigger Officer Armour's duty to preserve evidence. The evidence that came out in trial was that Officer Armour's phone stopped working sometime in late 2015 or early 2016. As the law has developed around ESI and technology has given us as lawyers a better understanding of ESI, we know that simply because an electronic device stops working doesn't mean that data is unrecoverable, doesn't mean that spoliation has even happened. We know that spoliation doesn't happen until that device is discarded. We don't know when that device was discarded because during the course of the initial cross-examination it did not come out, and then during the course of the re-cross-examination, the brief re-cross that the court permitted, we were not able to get into when that phone was actually disposed of. So as we sit here today... Wasn't it your burden to adduce those facts? Your Honor, I think the answer to that question is somewhat nuanced. On an initial level, the instinct would say, yeah, probably it's our duty to make a record. However, when you look at the policy behind requiring a plaintiff or any party in trial, in the heat of trial, to get an immediate disclosure about whose existence was denied for four years, in the moment when they're trying to win a trial, also develop a factual record about when the evidence was created and when it was destroyed, when the phone was actually disposed of, is to impose a substantial burden on counsel. Having said that, that was what we were under the understanding was the purpose for the re-cross, was to be able to explore these exact issues. We were not given that opportunity. As we started to go down that line, objections were made, objections were sustained, and the court shut us down. So that is, in fact, what our argument is, is that if, in fact, it is the plaintiff's burden in this case, the plaintiff should have been given the opportunity to make that record, and that was the intent before it was shut down by the district court. I'm sorry, so the district court disallowed you from asking the question of when he discarded the phone? That's correct, Your Honor. The re-cross was limited to the issue of Officer Armour's prior testimony and deposition, because the district court concluded that there was no spoliation, so the issues related to spoliation did not matter. All that mattered was this disclosure violation and the degree to which the trial testimony differed from the deposition testimony. As a result, the district court limited us to the issue of what was discussed at deposition. When we tried to elicit information about the phone, the duty to preserve the phone, the destruction of the phone, that drew objections and the course of the redirect, or excuse me, the re-cross was redirected by the court to we're here to talk about the scope of this disclosure violation and only that scope. It's a tough question, but would you happen to know a site, ER site for that discussion? I can certainly get it to the court. I don't know it off the top of my head, but I can say it is early on. Certainly ER 19 to 20 is the discussion about the court finding no spoliation of evidence. That was the night before and this would have been the morning of day for a trial. The entire re-cross was a matter of moments. I think it lasted less than five minutes looking at the excerpts of record. So our position is that spoliation, the failure to find spoliation was fundamental. It's evident on the record. And then the question becomes what is the appropriate remedy, which raises the issue of how substantial the prejudice was, how substantial the bad faith was and how substantial the prejudice was. In terms of the bad faith, the excerpts of record reveal that Officer Armour was well aware, again, of the evidence. It's important to keep in mind here because this is conflated in the defense brief a bit. This does not have to be dispositive evidence to be preserved and not be destroyed. It simply has to be relevant. And on this last day of trial, we're finding out that this evidence is clearly relevant and has been created and destroyed. So when we focus on what Officer Armour's conduct was, we know that, again, he was aware that Miss Anderson tried to record their interaction. She was angry at him. She'd already complained to a supervisor. He had that subjective state of mind. We also know that by his own testimony, before the phone was actually stopped even working, let alone was gifted or given away or thrown in the trash or whatever may have happened, we know that Officer Armour was under a separate investigation for an inappropriate interaction with a woman that ultimately resulted in a professional standards investigation. So during this period of time, we know that he had another investigation ongoing. He would have been attuned to what evidence might be relevant to that. And then we add the reason why he created this evidence in the first place. He testified that he started recording these detentions with women to avoid false accusations. And this is a key point because this is not a case like Serowac, the District of Arizona case, or most spoliation cases that involve a document created during the regular course of business. This document, this evidence, was created for the purpose of protecting himself from these exact types of allegations. The fact that it was despoiled without so much as letting counsel know or advising the opposing party that, hey, there may be this evidence out there until the last day of trial was absolutely devastating. I see that I am right at about 12 minutes, a little past that. I'm happy to field any other questions or reserve the rest of my time for rebuttal. All right. Why don't you preserve it for rebuttal? Thank you. May it please the Court, I'm Lori Burke and I am here on behalf of the City of Phoenix and Officer Anthony Armour. The excerpt of record where the questioning took place of the following morning after the judge had made his order starts at ER 595. Thank you. And what Mr. Benedetto started to do in that questioning was to go into the reasoning that Mr. Armour had been making recordings about trying to protect himself from false allegations made by female detainees. And that's where the judge said, you're going beyond what I had ordered. And Mr. Benedetto never asked the court for permission to request either in the presence of the jury or outside the presence of the jury when it is that Officer Armour discarded the phone. And I suspect that the judge would have permitted him to do that had he asked. But you're correct that it's his burden to adduce those facts and any other facts related to the issue of spoliation. The there was no duty on the part of Officer Armour to preserve the cell phone. There was no reasonable anticipation of litigation until he was served with the lawsuit in 2017. And when people are stopped during traffic stops, they regularly complain. And it's not at all uncommon for the subject of a traffic stop to request a supervisor because they're not happy with having been pulled over or the way they were talked to by the officer. The only complaint that was lodged by Ms. Anderson to Sergeant Honeycutt was that Officer Armour had not done anything about any alleged sexual inappropriate touching or anything of the sort. And there was nothing Why isn't it true that, I mean, the reason Officer Armour started recording as he even testified or you said started the practice of recording was because of anticipation of litigation. It wasn't an anticipation of litigation, Your Honor. It was to prevent false allegations of being made. That could be in the form of a complaint lodged to the police department. That doesn't mean litigation. And Ms. That's slicing it a little too thin, I think, because where do complaints made with the police department that aren't satisfied go? Complaints are commonly made against police officers to the police department and no lawsuits are filed. It's a very small percentage of lawsuits that are ultimately filed following a complaint that's made against a police officer. So, and that was an issue that was addressed in part in the Chattah-O'Hara versus O'Hara case that's in our materials, T-C-H-A-T-A-T I'm not quite sure how to pronounce it, but there the court made very clear that just by virtue of an individual being arrested, that doesn't create a reasonable anticipation of litigation. And the court went into the failure of the plaintiff in that case to present any kind of statistics. So here you would have to have some kind of statistic showing a correlation or a high correlation between the number of people lodging complaints against police officers with the number of lawsuits that are filed. And Mr. Benedetta, I'm sorry, Ms. Anderson, who has the burden of proof here, presented no such evidence and made no such argument here that complaints lodged against police officers commonly result in lawsuits. Because there is no support for that. The only reason that this information about the recording came out during trial for the first time is because that is the first time that Mr. Armour was ever asked about it. He didn't affirmatively bring this information out in an effort to prove his defense in the lawsuit and to sway the jury. He provided that information in response to a question that was asked of him by Mr. Benedetta. When he had been deposed, Mr. Benedetta had asked him if he made any digital recordings or digital or tape recordings. And he said no to both of those. And then he went on to talk about how he had started a practice of recording on his cell phone transports of female subjects when he was transporting them with no other officer in the car from the scene of an arrest to the jail. And Mr. Benedetta did not ask him the question, did you do this in the case of Ms. Anderson? Did you record that on your phone? Had he asked that question, Officer Armour would have truthfully responded yes, just like he did at trial when Mr. Benedetta finally asked that question. Now, in spoliation cases, you commonly have a situation where the parties don't know what's in the evidence that was destroyed or altered. Here, we don't have that. This is a different kind of a situation. This is a recording that plaintiff was involved in and she has personal knowledge as to what would have been on that recording. And her testimony was that the only information on that recording was that, the only statement she made on that recording was that she asked Officer Armour to loosen her handcuffs. He said no, no, no, don't ask again. That is irrelevant to any of the claims she asserted in the case. And the handcuffing wasn't even mentioned in Mr. Benedetta's closing argument. In the briefing, Ms. Anderson argues that the handcuffing and the tight handcuffs are part of her intentional infliction of emotional distress claim. But if you look at her testimony, she states that she was never injured as a result of the handcuffing. And I can direct you to the page where that is stated, if you'd like. And she also, I'm sorry, in the closing argument, Mr. Benedetta never makes the argument that anything that took place in the car during the transport to the quick trip or from quick trip to the jail played any role in any emotional distress. And in fact, Ms. Anderson put on absolutely no evidence of emotional distress at trial. And so the plaintiff has the burden, well strike that, let me back up. I would offer that Officer Armour wasn't even negligent, let alone grossly negligent or willful in trading his phone in for a new phone that was operational. That is what people do. And so because of that, Mr. Benedetta has the burden of proof, I'm sorry, Ms. Anderson has the burden of proof to show that there was prejudice. And there is no prejudice because A, Ms. Anderson knows precisely what was stated. B, there was nothing of any material importance that was stated. And although Ms. Anderson states in her brief that Officer Armour denies having made the statement she says was made, that the request to loosen the handcuffs and his response, his response was he didn't recall saying that. He didn't deny having said that. But again, we go back to this was not even a material fact. This isn't something that would have even been on the radar for Officer Armour to believe had any relevance. He didn't know that Ms. Anderson was making any sort of an allegation of any kind against him until he was served with the lawsuit. And the lawsuit complaint is the first time handcuffs are even mentioned. Handcuffs are the only topic of discussion that Ms. Anderson claims was raised during the recording. And when there's no evidence... Can I ask a question on a different subject? On the extrinsic evidence question and the Brady List, I get why the District Court excluded extrinsic evidence, but am I correct that the District Court also excluded that he couldn't be asked if he was on the Brady List? Yes. Why is that prejudicial? It's prejudicial because the jury's not going to have any understanding of what it means to be on the Brady List. The judge ruled that the probative value was outweighed by the danger of unfair prejudice. There were no experts at trial to explain what a Brady List is. And it was... There was nobody there to explain what was taken into consideration that led to him being placed on the Brady List. There's a whole host of information that would have needed to have been presented to put that into context. But what the court ruled was that any statements that were found to have been untrue, that formed the basis of being put on the Brady List, he could question Officer Armour about. Thank you. Does that answer your question? It does. Thank you. Okay. So... I don't... I think it's so abundantly clear here that there was no spoliation in the first instance. Also, the law is very clear that even when there is spoliation, the court should choose the least onerous sanction corresponding to the willfulness of the destructive act and the willfulness of the abusive act. And there are a number of cases that state that. And what this judge did is crafted an appropriate remedy to deal with Mr. Benedetto's argument that, you know, to the judge it was a close call whether Officer Armour completely responded to the question in his deposition. And so he permitted Mr. Benedetto to cross-examine him on this. And to keep everything in context, the judge was also dealing with sanctions, discovery of misconduct that he had determined Ms. Anderson committed in changing her story when she got to trial about what had occurred when she had disclosed that she would be testifying at trial consistent with her deposition. And so initially what the judge was planning to do was to craft an adverse inference instruction. And then once this incident happened, he made the decision that having permitted me to just go back and question her about that, just like he gave Mr. Benedetto the opportunity to do, satisfied any issues on both sides. So everything has to be put in context there. And the evidence was overwhelming. If you read through the record, the evidence of Ms. Anderson's lack of credibility, changing of stories, untruths by her, he has to also establish that the jury would have found differently had an adverse inference instruction being given. And it was so overwhelming, the evidence against her in terms of her credibility, that he can't demonstrate that in order to show that the court abused its discretion. And additionally, Mr. Benedetto never proffered an adverse inference instruction. And what would that adverse instruction have been? We had the testimony from Ms. Anderson in terms of what was stated on that recording. If Mr. Benedetto mentioned that Officer Armour was the last witness to speak, but Mr. Benedetto had the opportunity to put on a rebuttal case. And if he wanted to put additional evidence on testimony by Ms. Anderson about what took place on that recording, or ask any witness any more information on that topic, he had the opportunity to do that during rebuttal. And when the court asked him if he had any rebuttal, his response was, no, Your Honor, we have no rebuttal. And I'm running out of time, so I have nothing left to say that will only last five seconds. All right. Thank you, Counsel. All right. Mr. Benedetto, you have your remarks left. I have a question. Was the recording on the cell phone, was that a video recording or an audio recording? It was an audio recording, Your Honor, and I think that's a very important distinction and an important question because defense counsel mentioned the deposition testimony at which Officer Armour earlier testified that such recording didn't exist. He was asked if he audio recorded the conversation and said no. This was an audio recording that, per Officer Armour's testimony, began at the point when he took Ms. Anderson into custody in the back of his vehicle after the scene was cleared, transported her to the gas station, and ultimately completed his report and turned it off when he transported her to the police substation. Defense counsel mentioned that we have to view everything in context, and I think that's vital here because the context of what actually occurred between the time when Officer Armour left with Ms. Anderson in the back of his vehicle to the time when he actually booked her into jail is vital. We're talking about an hour and a half by Ms. Anderson's testimony. We're talking about being handcuffed in the back of the vehicle and from the dark back roads to the back of a dark gas station where no one was really around, where there was one conversation between her and Officer Armour about wearing handcuffs and wanting to get her handcuffs loosened, and Officer Armour testified at length that if Ms. Anderson had asked about these handcuffs, he would have removed them. Officer Armour's testimony was exactly contrary to almost all of this. He said he took major surface streets, busy surface streets in a prime time, 10 o'clock, 11 o'clock at night. He brought Ms. Anderson to the front of this gas station, which was well lit and busy, that this was something that there were people around for. The entire nature of their two testimonies on these points, this is not something where Ms. Anderson could simply say this is what happened and Officer Armour said it isn't what happened and we call Ms. Anderson on rebuttal and she repeats her earlier testimony. The audio recording would corroborate one person's story and refute the other person's in a case that was solely focused on witness credibility. It's difficult to overstate how important that independent evidence is in a case like this. So there really isn't a question here about relevancy. The question is, did the court err in failing to find spoliation? And that was what the court found was there was a disclosure violation and the spoliation issue is the kind of I do have 15 seconds left. I want to make sure I answer any other questions the court might have. Do Judges Brass or Lumete have any questions? No, thank you. Thank you very much, Counsel. Anderson vs. Armour is submitted.
judges: WARDLAW, BRESS, BUMATAY